UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GULNAR THAWAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-2675-B |
| | § | |
| 7-ELEVEN, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant 7-Eleven, Inc.'s Motion to Dismiss Plaintiff's Complaint (Doc. 5). For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** the Motion.

## I.

## BACKGROUND

This case arises from Defendant 7-Eleven, Inc.'s ("7-11") alleged misconduct towards Plaintiff Gulnar Thawar ("Thawar") during the time she worked there. In her Complaint, Thawar recounts a litany of abuses and misdeeds. First and foremost, she alleges that 7-11 failed to properly safeguard her personal identifying and financial information ("PII"), which resulted in her identity being stolen. Doc. 1, Compl. ¶¶ 2–3, 21–38. After bringing the breach to 7-11's attention, she was treated with increasing hostility, culminating in a physical battery by one of her managers. *Id.* ¶¶ 39–57. Subsequently, Thawar missed approximately two weeks of work after suffering injuries in an unrelated fall from her car. *Id.* ¶¶ 58–88. The hostile treatment continued upon her return, and she elected to work from home, ostensibly with 7-11's approval. *Id.* ¶¶ 89–104. During this time, 7-11 notified Thawar that it was designating her as an "inactive employee," and that she would not have

any job duties until a doctor cleared her to return to work. *Id.* ¶¶ 108–13. Despite her protestations, 7-11 did not change this designation. *Id.* ¶¶ 114–17.

Ultimately, Thawar voluntarily resigned her position. *Id.* ¶ 118, Ex. E. 7-11 accepted her resignation, and later did not oppose Thawar's application for unemployment benefits. *Id.* ¶¶ 119, 120–23, Ex. F. After the separation, Thawar did not receive her COBRA information[1] from 7-11 until it was too late to keep her health insurance coverage, though 7-11 maintains that it sent her the information in a timely manner. *Id.* ¶¶ 124–27, 131–32. In response to her request for her personal belongings, 7-11 informed Thawar that it could not locate any such belongings after an extensive search. *Id.* ¶¶ 128–30. Among the missing possessions were a Quran, photographs, glasses, a personal laptop and tablet, and information regarding the theft of her PII. *Id.* ¶ 168(A).

All said, Thawar brings seven claims against 7-11: (1) FMLA discrimination and retaliation based on injuries suffered in the fall from her car; (2) FMLA discrimination and retaliation based on her major depressive disorder; (3) failure to provide required COBRA information; (4) conversion; (5) battery; (6) negligence; and (7) negligent misrepresentation. Compl. ¶¶ 3, 137–94. 7-11 filed the instant Motion, which is best characterized as a motion for partial dismissal, to dismiss Thawar's COBRA, conversion, battery, negligence, and negligent misrepresentation claims. Doc. 5, Def.'s Mot. to Dismiss; Doc. 6, Def.'s Br. in Supp. Thawar has filed her Response, and 7-11 its Reply. Doc. 8, Pl.'s Resp.; Doc. 10, Br. in Reply to Pl.'s Resp. [hereinafter "Def.'s Reply"]. The Motion is now ready for review.

---

[1] The Consolidated Omnibus Budget Reconciliation Act (COBRA), in relevant part, obligates an employer to notify its ERISA plan administrator of an employee's qualifying event, which includes termination. 29 U.S.C. § 1166(a)(2). The plan administrator must then notify the employee of any rights she might have under COBRA. *Id.* § 1166(a)(4).

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

In its Motion, 7-11 seeks to dismiss five of Thawar's seven claims. The Court considers the viability of each challenged claim in turn.

A.    *Thawar's Claims*

1.    <u>COBRA</u>

Thawar has not identified her ERISA plan's administrator, which 7-11 argues is a fatal omission. Def.'s Br. in Supp. 5–6. Acknowledging this oversight, Thawar requests leave to replead her claim. Pl.'s Resp. 9.

"Only a plan administrator can be held liable under section 1132(c)."[2] *Mares v. Wood Grp. Mustang, Inc.*, No. H-14-089, 2015 WL 75271, at *2 (S.D. Tex. Jan. 6, 2015) (quoting *Hiney Printing Co. v. Branter*, 243 F.3d 956, 961 (6th Cir. 2001)). To state a claim for a violation of 29 U.S.C. § 1166(a), then, a plaintiff must include the plan administrator as a party. *See Aaron v. Leday*, No. 4:13-CV-1716, 2013 WL 5936623, at *4–5 (S.D. Tex. Nov. 5, 2013). Because Thawar has failed to do this, the Court dismisses her COBRA claim.

2.    <u>Conversion</u>

7-11 next attacks Thawar's conversion claim, insisting that she has failed to plead that it had the requisite intent to commit conversion. Def.'s Br. in Supp. 7–8. Thawar disagrees, arguing that intent is not a required element of conversion and, alternatively, that 7-11's inordinately negative response to her complaints about her PII supports the inference that it intended to deprive her of her

---

[2] 29 U.S.C. § 1132(c) provides the enforcement mechanism for violations of § 1166.

property. Pl.'s Resp. 3–4.

> Under Texas law, conversion has four elements:
>
> (1) [P]laintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property.

*Hoffman v. AmericaHomeKey, Inc.*, No. 3:12-CV-3806, 2014 WL 7272596, at *8 (N.D. Tex. Dec. 22, 2014) (quoting *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 888 (Tex. App.—Dallas 2009, no pet.)). "Before there can be a conversion, there must be an intent on the part of the defendant to assert some right in the property." *Dolenz v. Nat'l Bank of Tex. at Fort Worth*, 649 S.W.2d 368, 370 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.). "However, that intent need not be an intent to assert a right of ownership or title; it can be an intent to assert the right of possession." *Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 40 (Tex. App.—Dallas 2003, pet. denied).

Here, Thawar has satisfactorily alleged facts that at least give rise to a plausible inference that 7-11 is liable for conversion. She asserts that she owned the property at issue; she left the items at 7-11; she has requested their return; and 7-11 has not returned them, stating that it cannot locate the items. Combined with the hostile treatment she allegedly received, these facts, viewed in the light most favorable to Thawar, are enough to imply that 7-11 is purposely withholding her property as further retaliation. Taking action that permanently deprives a plaintiff of property counts as exercising "dominion and control" over that property. *See Labaty v. UWT, Inc.*, No. SA-13-CV-389, 2013 WL 4520562, at *5 (W.D. Tex. Aug. 26, 2013). Whether there is proof to support these allegations is a matter for summary judgment. For now, though, the Court cannot say that she has

failed to state a claim for conversion.[3]

3.     <u>Battery</u>

As to Thawar's battery claim, 7-11 requests dismissal on grounds that she has not alleged that it authorized her supervisor, Mark Markovic ("Markovic"), to use physical force to discipline employees. Def.'s Br. in Supp. 9–10. Analogizing to discrimination, Thawar contends that direct evidence of such authorization is seldom available. Pl.'s Resp. 4. She also argues that 7-11 can be vicariously liable for Markovic's actions even if it did not expressly authorize him to use physical force. *Id.* at 5.

The elements of a battery claim are "(1) a harmful or offensive contact (2) with a plaintiff's person." *Jackson v. Tex. S. Univ.*, 997 F. Supp. 2d 613, 632 (S.D. Tex. 2014). Here, Thawar seeks to hold 7-11, rather than Markovic, liable for its employee's actions. "As a general rule in Texas, an employer cannot be vicariously liable for the intentional torts of assault or battery perpetrated by its employee because such acts are not ordinarily within the course and scope of an employee's authority or employment." *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 493 (Tex. App.—Fort Worth 2002, no pet.). Such conduct "is considered as an expression of personal animosity and not for the purpose of carrying out a[n employer's] business." *Mackey v. U.P. Enters., Inc.*, 935 S.W.2d 446, 453 (Tex. App.—Tyler 1996, no writ). Nonetheless, "an employer may be held liable for the tortious acts of an employee if the acts are within the course and scope of employment." *Buck v. Blum*, 130 S.W.3d 285, 288 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "This requires proof that the employee

---

[3] 7-11's reliance on *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337 (Tex. App.—Austin 2004, no pet.), is unavailing. In *Smith*, the defendant admitted to exercising dominion and control; the only question was whether that exercise of control was lawful. *Id.* at 341–42. Thus, intent was not even at issue in that case.

is acting (1) within the general authority granted by the employer, (2) in furtherance of the employer's business, and (3) for the accomplishment of an object for which he is employed." *Id.* "An employee's tortious conduct will be found to be within the scope of employment when the tortious conduct is of the same general nature as that authorized or incidental to the conduct authorized." *Durand v. Moore*, 879 S.W.2d 196, 199 (Tex. App.—Houston [14th Dist.] 1994, no writ).

When deciding whether an employee's intentionally tortious actions occurred within the scope of his employment, "courts consider whether the [tort] was so connected with and immediately arising out of authorized employment tasks as to merge the task and the" tort into a single action "imputed to the employer." *Buck*, 130 S.W.3d at 289. In *Durand*, for example, the Texas Court of Appeals upheld liability against a club whose employee, tasked with "control[ling] the admittance of customers into the club," assaulted the plaintiff after he objected to the employee's preferential treatment of other customers. 879 S.W.2d at 200. The assault was merely "overzealous enforcement of the criteria and procedures used to select waiting customers for admittance into the club." *Id.*

This case is distinguishable from *Durand*. There, the employee's job was "to guard the employer's property and to protect it from trespassers," and thus "the act of using force [could] be in furtherance of the employer's business." *Id.* (quoting *Tex. & Pac. Ry. v. Hagenloh*, 247 S.W.2d 236, 239 (Tex. 1952)). Here, on the other hand, there is no allegation to support the conclusion, either directly or inferentially, that the use of physical force was within Markovic's general authority, or that it furthered 7-11's business. Thawar does allege that he "had the authority . . . to discipline employees within the work unit," Compl. ¶¶ 176–77, but this is not enough to show that 7-11 put Markovic "in a position that involves the use of force, so that the act of using force is in the furtherance of the employer's business." *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 583 (Tex.

App.—Houston [14th Dist.] 2005, no pet.).

Nor does *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605 (Tex. 1999), help Thawar. In that case, the plaintiffs' employer was held liable for its employee's intentional infliction of emotional distress. *Id.* at 617–18. The Texas Supreme Court relied on two rationales in reaching this conclusion: first, that the employee's conduct was within his general authority as plaintiffs' supervisor; and second, that he was a vice principal of the employer, and thus his conduct could be properly imputed to it. *Id.* But *Bruce* did not involve the use of physical force—rather, the plaintiffs complained of the supervisor's "daily use of profanity, short temper, and . . . abusive and vulgar dictatorial manner." *Id.* at 608. Moreover, the employer admitted that the supervisor's actions "were 'mere employment disputes.'" *Id.* at 618. Thus, the case does not bear on whether Markovic's battery was within the scope of his employment.

Nor has Thawar alleged facts that would show Markovic is a vice principal of 7-11, as this would require that he "have authority to employ, direct, and discharge" 7-11's employees, or that 7-11 "has confided the management of the whole or a department or division of [its] business" to him. *Id.* Unlike *Bruce*, where the supervisor was "the highest ranking management person stationed at the [plaintiffs'] facility, and . . . had authority to employ, direct, and discharge employees," *id.*, Thawar has asserted only that Markovic was a manager in 7-11's "Quality Assurance" work unit. Compl. ¶ 175. This is a far cry from alleging that Markovic was (1) a corporate officer, (2) authorized to "employ, direct, and discharge" employees, (3) "engaged in the performance of nondelegable or absolute duties of the" employer, or (4) entrusted with " the management of the whole or a department or division of [7-11's] business." *Bennett v. Reynolds*, 315 S.W.3d 867, 884 (Tex. 2010).

Thawar has not sufficiently alleged that 7-11 authorized Markovic to use force to discipline

its employees, that his actions were within his general authority, or that he was a vice principal of the company. She has therefore failed to state a battery claim against 7-11.

4.   Negligence

To defeat Thawar's negligence claim, 7-11 argues that (1) it is preempted by the Texas Workers' Compensation Act (TWCA); and (2) Thawar has failed to plead physical damages. Def.'s Br. in Supp. 10–11; Def.'s Reply 4–5.[4] Thawar, on the other hand, contends that her Complaint clearly shows that she has suffered financial injuries as a result of 7-11's negligent handling of her PII. Pl.'s Resp. 5–7. She also argues that negligence claims like hers are "neither new nor novel," pointing to two complaints based on the mishandling of employees' and customers' PII. *Id.* at 6; Doc. 9, Pl.'s App. in Supp.

The TWCA "provides the exclusive remedy for injuries sustained by an employee in the course of his employment as a result of his employer's negligence." *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997). "The only exception to this rule is for 'injuries resulting from an intentional or willful act of the employer.'" *Ajaz v. Cont'l Airlines*, 156 F.R.D. 145, 148 (S.D. Tex. 1994). To avail itself of this protection, however, an employer must be a subscriber under the TWCA. *Briggs v. Toyota Mfg. of Tex.*, 337 S.W.3d 275, 282 (Tex. App.—San Antonio 2010, no pet.); *see also Cook v. Fidelity Invs.*, 980 F. Supp. 438, 441 (N.D. Tex. 1995). Here, there is no allegation that 7-11 was or was not a subscriber. Nonetheless, the courts that have dismissed negligence claims based on TWCA preemption have relied on uncontroverted evidence that the employer was, in fact, a

---

[4] 7-11 also argues that it cannot be held liable for Thawar's fall from her car. Def.'s Br. in Supp. 11–13. Thawar has clarified, however, that she does not allege that 7-11's negligence caused her fall. Pl.'s Resp. 6. The Court will therefore not address this argument for dismissal.

subscriber. *See, e.g.*, *Balderrama v. Pride Indus., Inc.*, 963 F. Supp. 2d 646, 652–53, 663 (W.D. Tex. 2013); *Ajaz*, 156 F.R.D. at 148–49. The Court has no such evidence in front of it, nor has Thawar admitted that 7-11 is a subscriber. It therefore declines to dismiss her claim based on TWCA preemption.

What effect Thawar's failure to plead physical damages has is also unclear. She admits that she suffered only financial losses as a result of 7-11's allegedly negligent handling of her PII, Pl.'s Resp. 6, which appears to implicate Texas's economic loss doctrine. Broadly stated, the economic loss doctrine holds that "a person who suffers only pecuniary loss through the failure of another person to exercise reasonable care has no tort cause of action against that person." *See Sharyland Water Supply Corp. v. City of Alton, Tex.*, 354 S.W.3d 407, 415 (Tex. 2011) (quoting Jay M. Feinman, *The Economic Loss Rule and Private Ordering*, 48 ARIZ. L. REV. 813, 813 (2006)). The doctrine has been more limited in practice, however. In *Sharyland*, for instance, the Texas Supreme Court recognized that it has applied the doctrine "only in cases involving defective products or failure to perform a contract." *Id.* at 418.

The court expanded the doctrine's application slightly in *LAN/STV v. Martin K. Eby Constr. Co., Inc.*, 435 S.W.3d 234 (Tex. 2014), to include situations in which the parties feasibly *could have* allocated risks by contract. *Id.* at 248. Where allocation of risks by contract is not common, on the other hand, recovery in tort may still be available. *See id.* at 243–44 (identifying legal malpractice as an exception to the doctrine because "agreements regarding legal representation are not required in Texas, . . . and until relatively recently have not been the norm"). Furthermore, even where there is a contract between the parties, Texas courts will not apply the economic loss doctrine to bar a tort suit when the defendant is alleged to have breached "an independent legal duty, separate from the

existence of the contract itself." *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Ultimately, "the underlying purpose of the economic loss rule is to preserve the distinction between contract and tort theories in circumstances where both theories could apply." *LAN/STV*, 435 S.W.3d at 240 (internal alterations omitted) (quoting Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 WASH. & LEE L. REV. 523, 546 (2006)).

Here, it is not clear whether 7-11's data protection policy, which Thawar alleges 7-11 violated, was part of a contract with Thawar. Thawar acknowledges that she "relied on 7-11's policies and procedures, including [the data protection policy]," Compl. ¶ 19, but reliance alone does not a contract make.[5] *See Karns v. Jalapeno Tree Holdings, L.L.C.*, 459 S.W.3d 683, 692 (Tex. App.—El Paso 2015, pet. denied) (identifying the elements of contract formation). If the policy was part of Thawar's employment contract, then the economic loss doctrine may well apply to bar her claim. But the Court cannot discern from the Complaint if that is the case, and given the Texas Supreme Court's reticence to expand the doctrine beyond the context of products liability and contractual relations,[6] the Court will refrain from dismissing Thawar's negligence claim at this time.

### 5.   Negligent Misrepresentation

7-11 last attacks Thawar's negligent misrepresentation claim, arguing that she has based her

---

[5] Although reliance is an element of a promissory estoppel claim, *see Trevino & Assocs. Mech., L.P.*, 400 S.W.3d 139, 146 (Tex. App.—Dallas 2013, no pet.), such a claim is "available to a claimant only in the *absence* of a valid and enforceable contract." *Doctors Hosp. 1997, L.P. v. Sambuca Hous., L.P.*, 154 S.W.3d 634, 636–37 (Tex. App.—Houston [14th Dist.] 2004, pet. abated).

[6] The Court has no information regarding whether, as in *LAN/STV*, Thawar could have negotiated protection for her PII as part of her employment contract. Nor would considering such evidence at this stage be appropriate, as the Court cannot "look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey*, 197 F.3d at 774.

claim solely on its promise to act in the future, which Texas law does not permit. Def.'s Br. in Supp. 14–15; Def.'s Reply 5–6. Thawar agrees that such promises cannot qualify as negligent misrepresentations, but contends that 7-11's representation in this case involved a "present, ongoing, . . . *existing* fact," which is actionable. Pl.'s Resp. 8.

> In Texas, negligent misrepresentation requires proof of four elements:

> > (1) [T]he representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*General Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005). Such claims "cannot be based on promises to act or not act in the future, but rather must focus on misstatements of existing fact." *Agri-Plastics, Inc. v. Hog Slat, Inc.*, No. 3:09-CV-1271, 2010 WL 711811, at *3 (N.D. Tex. Feb. 26, 2010); *see also Gay v. City of Wichita Falls*, 457 S.W.3d 499, 508 (Tex. App.—El Paso 2014, no pet.) ("[T]he sort of 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, as opposed to false information about a promise of future conduct." (internal quotation marks omitted) (quoting *Airborne Freight Corp. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 295, 298 (Tex. App.—El Paso 1992, writ denied))).

Here, the allegedly false information that 7-11 provided was its data protection policy, which states, in relevant part:

> All non-public information which is not physically protected should be encrypted by an approved encryption technique such as Triple Data Encryption Standard (3DES) on systems that have encryption capability. Microsoft Windows 2000 and Windows XP have an option to enable Encrypted File Systems (EFS). This feature should be enabled by default on these platforms after procedures have been implemented to administer password recovery.

- 12 -

Compl. ¶ 14(A)(1). The Court reads this policy as, at best, a promise of future conduct. Thawar has not alleged that 7-11's PII protection at the time she read the policy was not as described; rather, she asserts that, at some point after she took her job, 7-11 stopped adhering to the policy. Thus, she accuses 7-11 of misrepresenting that it would *continue* to follow the policy during the course of her employment, which is merely a promise of future conduct.

This case is analogous to *Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326 (5th Cir. 2013), which arose from a mortgage foreclosure. There, the plaintiff sued the mortgagee of his property after it foreclosed on the subject property while the plaintiff's loan modification application was pending, which it had promised not to do. *Id.* at 328. The Fifth Circuit found that the plaintiff's negligent misrepresentation claim failed as a matter of law because the mortgagee's representation was merely a "promise[] of future action." *Id.* at 329. Similar to the mortgagee's promise that it would not foreclose while the mortgagor's application was pending, 7-11—at most—promised Thawar that it would protect her PII in a certain way during her employment. The fact that it may ultimately have departed from that practice does not mean that it misrepresented an existing fact at the time it communicated the policy to Thawar, any more than the mortgagee conveyed false information to the mortgagor in *Milton*. Thawar's claim must be dismissed.

B.      *Leave to Amend*

Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a

manner that will avoid dismissal."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (stating that "a court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted" (internal alterations omitted)).

Thawar has requested leave to amend her COBRA claim to identify the plan administrator. Pl.'s Resp. 9. The Court concludes that leave to amend this claim is appropriate, and she may also amend her battery claim, if she can do so in a way that overcomes the deficiencies identified above. Amending the negligent misrepresentation claim would be futile, however, because the promise that Thawar has identified is one relating to future conduct, which simply is not actionable as a negligent misrepresentation. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) (finding that "[i]t is within the district court's discretion to deny a motion to amend if it is futile," which occurs when "the amended complaint would fail to state a claim upon which relief could be granted").

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** 7-11's Motion to Dismiss with respect to Thawar's COBRA, battery, and negligent misrepresentation claims, and **DENIES** it with respect to her conversion and negligence claims. The Court further **GRANTS** Thawar **leave to amend** her complaint with respect to her COBRA and battery claims on or before **March 11, 2016**.

SO ORDERED.

SIGNED: February 29, 2016

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE